The facts in the case are fully set out in the opinion of the Court.
His Honor, upon the hearing below, allowed the exceptions of the defendants, modifying the same, giving judgment accordingly. From this judgment both plaintiffs and defendant appealed.
The defendants' intestate purchased of the plaintiff's intestate all his interest in a certain tract of land, and in payment therefor executed the paper writing of which the following is a copy, viz:
"Know all men, that I, W. A. Joyce, have this day bought L. Lynch's interest in the Lynch Halcombe mill, for twenty-five hundred dollars, which I am to pay in the following manner, to wit: I am to deliver up to said Lynch a note which I hold on him for near seventeen hundred dollars, and I am to pay balance for Lynch to Grimes Halcombe, or to secure the same to said Halcombe in some satisfactory manner.
(402) W. A. JOYCE, [L. S.]
May 19th, 1865."
The note referred to in the above bond was set up by defendant as a counter-claim, of which the following is a copy, viz:
"One day after date, I promise to pay W. A. Joyce, or order, $1,777.65, for value received, with interest on $1,442.79 thereof from the 4th day of December, 1863, to be paid in specie or its equivalent, as that note is given for a specie note which was made before the war.
L. LYNCH, [L. S.]
Feb. 13, 1865."
Upon the pleadings the case was referred to a commissioner to take an account and report. In the report, the commissioner allowed the said note and interest thereon as a credit upon the plaintiff's demand, to which the defendant excepted, for that the commissioner had not allowed him the premium on said note as a specie note, and as of the date of the note. *Page 329 
Upon hearing the exception, his Honor sustained it to the extent of allowing premium on the note, as of the date of taking the account, to wit: September 25th, 1871. Both parties being dissatisfied with the ruling of his Honor, appealed to this Court.
The question presented is, not what was the value of the $1,700 note under a former contract between the parties when it was executed, but it is, what is the proper construction of another and different contract, to wit: that set forth in the covenant sued on. The legal value of the note is one thing, the contract value, as established by the covenant, is another. It is plain that the parties had in view and applied the same standard of value in fixing the price of the land and the price of the note, nothing appearing in the covenant of sale to the contrary.
The plaintiff agrees to take $2,500 for his land, without (403) specifying the currency; the defendant agrees to deliver in payment a note of a nominal amount, without specifying the currency. If the defendant had performed his part of the contract by immediately surrendering up the note, it would have extinguished the plaintiff's demand to the nominal value only of the note, there being no stipulation in the covenant for taking it at another and greater value than in the words of the covenant, "near seventeen hundred dollars." The parties themselves thus fix the price of the land and the price of the note in the covenant, and are concluded in the absence of any proof of a contrary intent.
This covenant was entered into on the 19th of May, 1865, at a time when Confederate money had ceased to be a currency, and no other had appeared to supply its place; the inference would be that both parties made, as the basis of their trade, the only standard of value then known to them, to wit; specie.
Judgment reversed, report confirmed and judgment according thereto.
PER CURIAM. Judgment accordingly. *Page 330